UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHARA CAWLEY-BRUSO, et al., | CASE NO. C19-478 MJP |
| Plaintiffs, | ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| RAY KLEIN INC, | |
| Defendant. | |

The above-entitled Court, having received and reviewed:

1. Plaintiffs' Motion for Partial Summary Judgment as to Liability (Dkt. No. 16),

2. Defendant's Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment as to Liability (Dkt. No. 17),

3. Plaintiffs' Reply in Support of Plaintiffs' Motion for Partial Summary Judgment as to Liability (Dkt. No. 20),

all attached declarations and exhibits, and relevant portions of the record, rules as follows:

IT IS ORDERED that the motion is PARTIALLY DENIED (both as to Plaintiffs' motion to strike and as to that portion of Plaintiffs' theory of liability based on their alleged non-indebtedness).

IT IS FURTHER ORDERED that the parties are to provide further briefing on the issue of the application of the statute of limitations to claims under RCW4.16.040(2) (the "accounts receivable" statute) as detailed at the conclusion of this order.

**Background**

From 2009-2013, Plaintiff Shara Cawley-Bruso ("Cawley-Bruso") worked as a veterinary technician for the Animal Hospital at Murphy's Corner ("AHMC"). She alleges that during that period all veterinarian services provided through AHMC were provided at no cost as a benefit to the employees. Dkt. No. 16-1, Decl. of Cawley-Bruso at ¶¶ 10-11.[1] Plaintiff Cawley-Bruso does not dispute that services were provided to pets belonging to her and her husband (co-Plaintiff Michael Bruso ["Bruso"], who was her boyfriend during this period); she says she did a lot of the veterinarian work, but again does not dispute that she used AHMC's facilities and equipment.

Beginning in August 2015 until January 2019, Plaintiffs began receiving collection notices from Defendant Professional Credit Service ("PCS"), relating to a series of debts totaling $751.95 and allegedly owed to AHMC. Dkt. No. 16-1, Decl. of Cawley-Bruso, Ex. A.[2] The timing of the letters is relevant. The first letter is dated August 10, 2015, is addressed to Bruso alone and cites a debt of $751.70. (BRUSO 024.) The second is dated August 11, 2015, is again

---

[1] Cawley-Bruso's former employer testifies to the contrary. Dkt. No. 17-1, Decl. of Sowder. *See* discussion in "Analysis" section *infra*.

[2] While the collection notices from 2016 onward appear only concerned with the $750 debt, there is a notice from October 15, 2015 addressed to "Shara Cawley" (Ex. A, BRUSO 026) documenting what appears to be a separate debt of $1838. The later collection notices only cite the alleged $750 debt and neither Plaintiffs' or Defendant's briefing talks any further about this additional amount.

addressed to Bruso alone and references a debt of $751.95. (BRUSO 025; it is identical in every other respect to the 8/10/15 letter, with no explanation for the $0.25 discrepancy.) The third is dated October 15, 2015, is addressed to Cawley-Bruso, and cites the $1838 debt (this claim is mentioned nowhere else in the parties' arguments; *see* fn. 2). The fourth is dated January 29, 2016, is addressed to Bruso and claims a total amount owing of $781.24 ($750.95 + $30.29 interest; BRUSO 004-005). A fifth letter, dated November 15, 2017, is addressed to Cawley-Bruso and cites a $750.95 claim plus interest of $191.99 for a total of $924.94. (BRUSO 002.) The final letter is dated January 25, 2019, is addressed to Bruso and cites the $750.95 debt with interest now grown to $299.97 for a total of $1,050.93. (BRUSO 001.) Except for the October 15, 2015 letter to Cawley-Bruso, all letters (regardless of whom they are addressed to) cite the same PCS and AHMC account numbers.

In addition to her position that AHMC employees received free veterinary services, Plaintiff Cawley-Bruso also asserts that (1) she never saw any invoices during her five years of employment, (2) the clinic veterinarian (and owner) listed on the invoices did "nearly none" of the work reflected in the billing, (3) the invoices do not "represent any services actually rendered" (this allegation is not explained further and the Court is unclear on what it means), and (4) she never agreed to pay for any of the services actually rendered. Id. at ¶¶ 16-20. Plaintiff Bruso declares that he relied on Cawley-Bruso to arrange for (and provide) the treatment for their pets. Dkt. No. 16-2, Decl. of Bruso, ¶¶ 4-5.

In 2016, PCS reported the alleged debt as a liability on Plaintiff Bruso's credit. Id. at ¶ 8. PCS continued to accumulate interest payments on the alleged unpaid debt; in January 2019, the company sent a collection notice demanding $1,050.92 and threatening legal action. Decl. of Cawley-Bruso, Ex. A, BRUSO 001.

Plaintiffs initiated this lawsuit in state court in March 2019, asserting violations of the federal Fair Debt Collection Practices Act ("FDCPA") and the Washington Collection Agency Act ("WCAA"); Defendant removed the matter to federal court on April 1, 2019. Dkt. No. 1-1.

**Analysis**

Plaintiffs' Motion to Strike

Plaintiffs make a three-fold motion to strike. First, they move to strike Defendant's response as untimely, but the Court has already entered an order permitting a late-filed response in this matter. (Dkt. No. 22).

Plaintiffs next move to strike the relevant (and damaging to their case) portions of the Declaration of Donna Sowder. (Dkt. No. 17-1.) Sowder is owner of AHMC and Plaintiff Cawley-Bruso's former employer. Her declaration asserts in relevant part that (1) her employees received discounted services, but she had no agreement with Cawley-Bruso to provide a 100% discount, and (2) the services reflected in "the records I provided to Ray Klein, Inc. are true and accurate." (Id. at ¶¶ 9-11.)

Plaintiffs move to strike on hearsay and foundational grounds, arguing that (1) Sowder's reference to "records" is too imprecise to authenticate the billing documents cited in Defendant's briefing and (2) Defendant cannot authenticate the documents attached to Cawley-Bruso's declaration (which are the bills Sowder sent to the collection agency documenting the alleged debt) because no foundation relative to the business records exception has been laid.

The Court DENIES the motion to strike the targeted portions of Sowder's declaration. While Plaintiffs are correct that Defendant has failed to lay a foundation adequate for the business records exception, the objection regarding "imprecision" is little more than quibbling – there is no doubt in the Court's mind which records Sowder is referring to. Furthermore, even if

the Court were to strike those elements of the declaration, it would still be a damaging summary judgment document. The truly relevant portions of Sowder's declaration (for summary judgment purposes) are her assertions that she is the owner of the clinic, that she did work on Plaintiffs' animals for which she was not paid, and that there was no "100% discount" for employees. These are all within her personal knowledge and sufficient to create genuine disputes of material facts for summary judgment purposes.

Plaintiffs also move to strike a statute of limitations defense asserted by Defendant; that aspect of Defendant's case will be addressed *infra*.

Summary judgment motion

Plaintiffs basically have two claims: violations of the FDCPA and the WCAA (via the Washington Consumer Protection Act). Their legal theory is two-fold: (1) they do not owe the money; and (2) even if they did owe the money, the statute of limitations on the debt has expired. The collection agency's defenses to Plaintiffs' claims fall into several categories: 1. The money is owed. 2. There is no statute of limitations problem with our claim. 3. Plaintiff Cawley-Bruso cannot proceed against PCS on Counts 1, 2, and 5.

Sowder's declaration is sufficient to defeat Plaintiffs' summary judgment argument that the money is not owed. It is clearly a genuine issue of disputed material fact and is central to the claim, thus Plaintiffs are not entitled to judgment on that issue as a matter of law. The summary judgment motion boils down to the parties' statute of limitations arguments (and Defendant's corollary argument that Cawley-Bruso does not have standing to sue on one of her claims).

I. **Defendant's "affirmative defenses"**

A. *The FDCPA statute of limitations on Cawley-Bruso's FDCPA claims (Cts. 1 and 2) has expired*

Defendant references its letter of November 15, 2017, specifically addressed to Cawley-Bruso (BRUSO 002), and then cites to the FDCPA's one-year statute of limitations (15 U.S.C. § 1692k(d)) to argue that Plaintiffs' April 1, 2019 filing of their complaint puts Cawley-Bruso's claims under the FDCPA (Cts. 1 and 2) outside the limitations period.

Plaintiffs first move to strike PCS's statute of limitations defense for Defendant's failure to plead it in its answer or file an amended answer asserting the defense. Defendant argues in its response that "a statute of limitations defense may be raised for the first time at summary judgment." (Dkt. No. 17, Response at 2; *citing* Rivera v. Anaya, 726 F.2d 564, 566 (9th Cir. 1984).) Plaintiffs point out that it is within the Court's *discretion* (i.e., not mandated) to allow the defense to be raised for the first time on summary judgment (*citing* Simmons v. Navajo County, 609 F.3d 1011, 1023 (9th Cir. 2010)), but it is clear from the case law that the controlling factor is whether Plaintiffs can demonstrate any prejudice arising from the presentation of the defense at a late stage. Plaintiffs cite no prejudice and the rule is clear that, absent prejudice, the defense may be asserted as PCS has done here. Plaintiffs' motion to strike in this regard is DENIED.

Beyond their attempt to strike the limitations defense, Plaintiffs make no further argument concerning the November 15, 2017 letter; i.e., they appear to concede, at least for purposes of this motion, that they cannot base their federal claim on that correspondence (leaving only the January 2019 letter as the basis for the FDCPA claims in their lawsuit).

### B. *Cawley-Bruso has no standing sue on Count 5 (RCW 19.16.250(16))*

The Court does not find this a convincing argument. Count 5 (RCW 19.16.250(16)) concerns the statutory prohibition against "threats [by collection agencies] to take actions that cannot legally be taken." PCS argues that, because the January 25, 2019 letter was addressed only to Plaintiff Bruso, Ms. Cawley-Bruso cannot assert a claim based upon it. But that would also mean she could not assert a claim as to Count 4 (another RCW collections agency statute), leaving the question of why the defense was not raised in regards to that count as well (or vis-à-vis the FDCPA claims, for that matter).

In any event (as regards either the FDCPA or RCW claims), it is not meritorious. Donna Sowder asserts that Bruso and Cawley-Bruso were joint holders of the account. (Dkt. No. 17-1 at ¶¶ 6, 8.). The collection letters received by both Plaintiffs reference the same account number, and the account invoices contain both Plaintiffs' names. When Defendant unsuccessfully attempted to assert (without requesting leave of the Court) a counterclaim in the action, it was against both parties for the alleged debt. It defies logic and equity to argue that Cawley-Bruso has no standing simply because she was not named in the only letter admissible in considering the applicable federal statute of limitations.

## II. Plaintiffs' statutes of limitations arguments

Plaintiffs cannot prevail on summary judgment on their claim that they did not owe the debt; Sowder's declaration is sufficient to defeat that argument. They argue that, even assuming the money was owing, the statute of limitations on the claim has expired and Defendant is therefore liable for attempting to collect on an invalid debt.

Plaintiffs cite RCW 4.16.080(3)[3] for their argument that the statute of limitations for any debt which PCS is attempting to collect is three years. The latest date on the invoices relied upon by Defendant for the alleged debt is December 7, 2013 (BRUSO 023), therefore the limitations period would have expired in 2016.

Defendant responds that Plaintiffs are wrong; the applicable statute of limitations is found in RCW 4.16.040(2):

> The following actions shall be commenced within six years:
> * * *
> **(2)** An action upon an account receivable. For purposes of this section, an account receivable is any obligation for payment incurred in the ordinary course of the claimant's business or profession, whether arising from one or more transactions and whether or not earned by performance.

The Court agrees with Defendant: RCW 4.16.040(2) is clearly intended by the legislature to be an exception to the 3-year statute of limitations created by RCW 4.16.080(3). In determining which of these statutes to apply, the Court must determine (1) whether the moneys allegedly owed by Plaintiffs qualify as an "account receivable" and, if so, (2) at what point does the cause of action on an "account receivable" accrue?

Whether this alleged debt is an "account receivable" under RCW 4.16.040(2) depends on whether it is an "obligation for payment incurred in the ordinary course of the claimant's business or profession" as stated in the statute. The Washington Supreme Court construed the phrase as follows: "'[A]ccounts receivable' means 'the amounts due [a business] on account

---

[3] The following actions shall be commenced within three years. . . (3) Except as provided in RCW 4.16.040(2), an action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument;

from customers who have bought merchandise or received services.'" Tingey v. Haisch, 159 Wn.2d 652, 659 (2007).

Plaintiffs attempt to repudiate the application of the statute to their circumstances on a number of grounds:

(1) <u>Plaintiff is not a customer, and did not receive services "in the ordinary course of business:"</u> While Plaintiffs offer little explanation, the essence of this argument appears to be that Cawley-Bruso was an employee (as opposed to a "customer") and that the treatment of pets of employees is not within "the ordinary course" of a veterinary business. She cites no legal authority for this position and the Court does not find it compelling. If (as Sowder asserts) employees were offered discounted (not free) services, then they were customers, albeit a specialized subset of customer.[4] And the treatment of animals is in the ordinary course of a veterinary business.

(2) <u>There is "no admissible evidence that any specific services were actually rendered:"</u> This is presumably a reference to Defendant's failure to authenticate the invoices at BRUSO 007-023 as business records. Plaintiffs are technically correct, but the Court finds that Defendant (who clearly is in contact with the clinic owner) will likely be able to authenticate the records and is not inclined to give Plaintiffs summary judgment on what amounts to a remediable legal technicality.

(3) <u>"Contrary to PCS' assertions, there is also no admissible evidence that any payments were ever made to anyone:"</u> Plaintiffs do not offer further explanation for this argument. The Court fails to see its bearing on the issues presented in this motion.

---

[4] It is highly unlikely, for example, that Plaintiffs would take the position that, had any services provided by the clinic been negligently performed, they would not have been able to pursue the same legal remedies as any other customer.

The far more pertinent question – and the one which the Court will require the parties to brief further – is *when* the claim for an "account receivable" accrues for purposes of calculating the 6-year statute of limitations; i.e., when does the clock start ticking on a liability arising out of an account receivable? Both sides have valid arguments – Defendant argues that an "accounts receivable" statute of limitations cannot be calculated on the basis of each individual liability which makes up the total account[5], while Plaintiffs argue that creditors cannot be permitted to leave an account "open" as long as they choose (i.e., until they are ready to collect on it), essentially creating an "unlimited limitations period."

The Tingey case offers little guidance. As noted in the footnote *infra*, the court declines to calculate the statute of limitations on a transaction-by-transaction basis, or even on the basis of the "accounting and billing" practices of the business (which suggests an exclusion from the limitations equation of the question of what a particular business's policy is relative to how long it will "carry" a debt before referring it for collection or taking its own legal action). Does the point at which the business referred the debt for collection constitute the closing of the account receivable and the beginning of RCW 4.16.040(2)'s 6-year limitations clock? There appears to be no case law on the topic and the parties offer no analysis or solution in their briefing.

---

[5] As the WA Supreme Court observed in Tingey:

> [A] more narrow definition of "account receivable" would produce a truly absurd, unworkable result. The appropriate statute of limitation in a collection action for attorney fees cannot reasonably turn on a fact-specific inquiry into the accounting and billing practices of the attorney, the transactional characterization of the legal services provided, and the client's history of payments on the account. Such a definition would produce a significant volume of litigation as parties attempted to determine precisely what accounting practices were required to benefit from the six-year limitation. The ramifications would extend well beyond attorney-client fee collection actions to other professional service providers, as well as general businesses.

Tingey, *supra* at 665.

Thus the Court finds itself unable at this point to rule definitively on the statute of limitations issue as it applies to Plaintiffs' state law claims. It will left to the parties to further develop these issues by briefing the following questions:

1. How is the Court to calculate the statute of limitations under RCW 4.16.040(2) as it applies to Plaintiffs' claims under state law?
2. How does the fact that Defendant has not initiated a legal action against Plaintiffs impact the statute of limitations analysis in this case?

It is the Court's intention to simplify this process, and hopefully expedite a decision on this motion, by having the parties file simultaneous briefs, simply presenting their positions on the same deadline rather than attempting to discredit the other side's analysis.

Both sides are ordered to submit a brief addressing the questions above, not to exceed 12 pages in the usual format, by no later than **January 3, 2020.**

The clerk is ordered to provide copies of this order to all counsel.

Dated December 17, 2019.

Marsha J. Pechman
United States Senior District Judge